C&S Wholesale Grocers, Inc. *vs.* City of Westfield.

Hampden. January 7, 2002. - April 5, 2002.

Present: Marshall, C.J., Ireland, Spina, Cowin, & Cordy, JJ.

*Taxation,* Real estate tax: assessment. *Real Property,* Tax. *Constitutional Law,* Real estate tax, Municipalities, Delegation of powers.

The local option in the third sentence of G. L. c. 59, § 2A (*a*), allowing municipalities to examine changes in improvements to property during the period January 1 to June 30, to include as taxable property those improvements completed after the statutory date of January 1, did not offend constitutional requirements of proportional taxation either with respect to taxation of municipalities accepting the local option and those not accepting the option, or with respect to taxation of property owners within the same municipality. [461-464]

The local option in the third sentence of G. L. c. 59, § 2A (*a*), allowing municipalities to examine changes in improvements to property during the period January 1 to June 30, to include as taxable property those improvements completed after the statutory date of January 1, did not constitute an improper delegation of legislative authority to tax to municipal governments. [464-466]

Civil action commenced in the Superior Court Department on June 13, 1997.

The case was heard by *Mary-Lou Rup*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Felicity Hardee* (*Jeffrey E. Poindexter* with her) for the plaintiff.

*Wendy H. Sibbison* for the defendant.

Ireland, J. This case raises the question whether it is unconstitutional for a municipality to impose taxes on real property improvements made after the statutory tax date of January 1. The challenged provision, under G. L. c. 59, § 2A (*a*), provides as follows:

"Real property for the purpose of taxation shall include

all land within the commonwealth and all buildings and other things thereon or affixed thereto . . . . The assessors of each city and town shall determine the fair cash valuation of such real property for the purpose of taxation on the first day of January of each year. *Notwithstanding the foregoing, in any city or town which accepts the provision of this sentence, buildings and other things erected on or affixed to land during the period beginning on January second and ending on June thirtieth of the fiscal year preceding that to which the tax relates shall be deemed part of such real property as of January first*" (emphasis added).

The plaintiff, C & S Wholesale Grocers, Inc., alleges that the 1989 amendment to G. L. c. 59, § 2A (*a*), which added the current third sentence of the statute, was unconstitutional under the Massachusetts State Constitution. St. 1989, c. 653, § 40. As a result, it maintains, the tax levied by the city on its real property was excessive and disproportionate and, therefore, should be abated. The plaintiff further alleges that the amendment to the statute improperly delegates legislative power to an administrative body. Because we conclude that the statute is constitutional and properly delegates taxing authority to municipalities, we affirm the judgment of the Superior Court.

I. *Facts*.

The parties submitted a statement of facts. On or about November 2, 1995, WJR&D Associates Limited Partnership (WJR&D) purchased approximately 152 acres of unimproved land in Summit Lock Industrial Park (property) in Westfield (city) for purposes of constructing a frozen food warehouse. WJR&D bought the property from Westmass Area Development Corporation for $2,200,000. Construction of the warehouse commenced on or about November 2, 1995, and was ongoing as of January 1, 1996. As of that date, there were no permanent buildings or structures, and construction of the driveways and the parking lots had not been completed.

On February 20, 1996, WJR&D sold the Summit Lock property to L&S Associates (L&S), a Vermont limited partnership, for $2,524,323.73. On February 23, 1996, L&S leased the Summit Lock property to the plaintiff, which is engaged in the business of distributing fresh and frozen foods, and has a

principal place of business in Brattleboro, Vermont. Pursuant to paragraph three of the lease, the plaintiff is responsible for the payment of all taxes assessed on the Summit Lock property.

From January 2 to June 30, 1996, construction of the improvements on the property continued, and the warehouse was substantially complete on June 30, 1996. On December 5, 1996, the city issued two tax bills totaling $576,876.86 to WJR&D for the property for the fiscal year 1997 (July 1, 1996 - June 30, 1997). The bills were based on an assessed value of the property of $22,009,800. Because the city counsel had voted to accept the third sentence of the statute on January 19, 1990, the board of assessors (assessors) deemed the improvements added to the property to have been part of the real property as of January 1, 1996.

On January 3, 1997, and May 29, 1997, the plaintiff paid the tax bills, and subsequently filed a timely application for abatement with the assessors. The application was denied on March 12, 1997. The plaintiff then filed a timely appeal with the Appellate Tax Board (board). On June 13, 1997, the plaintiff commenced this action by filing a complaint for declaratory relief in the Superior Court. According to the plaintiff, its appeal before the board was stayed pending the conclusion of the case. The parties filed cross motions for summary judgment, and the judge ruled in favor of the defendant. The plaintiff appealed and we granted its application for direct appellate review.

II. *Discussion.*

A. *Constitutional requirement of proportionality.* The plaintiff argues that the Massachusetts Constitution requires proportionality in the taxation of real property Statewide, and that the third sentence of G. L. c. 59, § 2A (*a*), causes the taxes levied on properties within a city or town accepting the local option to be out of proportion with other municipalities not accepting the local option. The plaintiff also asserts that the local option makes taxes within a municipality disproportionate because it includes increases in value resulting from improvements and not those resulting from any other change after the tax date.

Article 10 of the Massachusetts Declaration of Rights states: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to

standing laws. He is obliged, consequently, to contribute his share to the expense of this protection . . . ." Part II, c. 1, § 1, art. 4, as amended by art. 112 of the Amendments to the Massachusetts Constitution, provides more specifically: "And further, full power and authority are hereby given and granted to the said general court . . . to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying, within the said Commonwealth, except that . . . the general court may classify real property according to its use in no more than four classes and to assess, rate and tax such property differently in the classes so established, but proportionately in the same class. . . ." We have interpreted these constitutional provisions to require that taxes be proportionate within each class and within each municipality.[1] See *Opinion of the Justices*, 378 Mass. 802, 812-815 (1979); *Associated Indus. of Mass., Inc.* v. *Commissioner of Revenue*, 378 Mass. 657, 664 (1979). Thus, we reject the plaintiff's argument that the local option is unconstitutional because the taxes paid by property owners in a municipality accepting the option need not be proportionate with property owners in municipalities not accepting the option.

Moreover, the local option does not result in disproportionate taxation of property owners within the same municipality. Under the local option, all properties are treated uniformly with respect to the inclusion of improvements added or destroyed after the

---

[1]The plaintiff claims that our cases deal only with tax rates and that valuation must still be uniform Statewide. We do not need to reach that far because valuation is not implicated in the challenged provision. The challenged provision only affects the assessors' initial task of identifying taxable property.

The statutory goals of uniformity in valuation and assessment are unaffected by the local option. There is no question that each municipality's assessors must value property at its fair cash value. See G. L. c. 40, § 56; G. L. c. 58, § 1A; G. L. c. 59, §§ 2A, 38, 52. See also *Opinion of the Justices*, 378 Mass. 802, 803 (1979). Fair cash valuation continues to be the requirement after the promulgation of the local option.

Moreover, the actual value of any given property likely would differ from one municipality to the next. The plaintiff's argument is in fact that the method of valuation must be uniform. No particular method is required in arriving at the fair cash valuation of property. See *Tennessee Gas Pipeline Co.* v. *Assessors of Agawam*, 428 Mass. 261, 263 (1998) (board not required to adopt any particular method of valuation); *Northwest Assocs.* v. *Assessors of Burlington*, 392 Mass. 593, 595 (1984) (same).

January 1 tax date and by June 30. All such changes in improvements must be included in the determination of the tax assessed on such properties. Additionally, changes with respect to improvements that are captured by the local option are evaluated as if they were completed on January 1; the prevailing market conditions existing on that date determine the value of improvements. Furthermore, all properties are treated equally and identically with respect to changes in value resulting from other market forces. Such changes are not accounted for after the tax date of January 1. The local option does not violate constitutional requirements of proportionality.[2]

The local option is meant to capture or account for the loss of new construction or improvements, and not to capture new value. Prior to the promulgation of the local option, property owners constructing and completing improvements after the tax date but before the beginning of the next tax year benefited from a de facto one-year exemption on the new construction or improvement. The local option allows municipalities with the resources and personnel to examine changes in improvements during the interim period, January 2 to June 30, to include as taxable property those improvements completed after the tax date. The local option reduces the potential incidence of property owners' benefiting from new construction and, thus, the use of more municipal services without contributing their share of municipal expenses. The decision to take on the additional administrative burden of exercising the local option is based on local criteria, and the local option adds flexibility to the administrative scheme. Cf. *Axelrod* v. *Assessors of Boxborough*,

---

[2]The plaintiff argues in a footnote that the local option allows for the "spot" reassessment of individual properties, and therefore, creates disproportionate taxation. The plaintiff cites cases from another jurisdiction, with a similar proportionality requirement, to support its assertion. See *Dade County* v. *Eldridge*, 229 Ga. App. 401 (1997); *Thorpe* v. *Benham*, 161 Ga. App. 116 (1982). We do not agree. The local option under G. L. c. 59, § 2A (*a*), does not allow for the "spot" reassessment of individual properties. A municipality accepting the local option takes on the obligation of reexamining all of the properties within its taxing jurisdiction to capture improvements completed thereon after January 1 and before June 30. The local option does not allow the taxing authorities to assess a tax on some properties on which improvements have been made and not on others.

392 Mass. 460, 463-464 (1984) (use of biennial equalized valuations justified as matter of administrative convenience).

B. *Delegation of legislative power.* The plaintiff alleges that the local option represents an improper delegation of legislative power because it does not provide sufficient guidance to a municipality accepting the option and it does not provide for judicial review. For the following reasons we reject the plaintiff's arguments.

The principle that the General Court may not delegate the authority to make laws is firmly established. See *Opinion of the Justices*, 393 Mass. 1209, 1219 (1984), and cases cited. The Legislature may, however, delegate to an officer of the executive branch or to a municipality "the working out of the details" of a legislatively established policy. *Id.* The propriety of such a delegation is determined by posing three questions: (1) Whether the Legislature delegated the making of a fundamental policy decision, or merely the implementation of a legislatively determined policy; (2) whether the act provides adequate direction to the implementing authority, either in the form of statutory standards or sufficient guidelines for the establishment of such standards by the implementing authority; and (3) whether the act provides safeguards to control the abuse of discretion. See *Powers* v. *Secretary of Admin.*, 412 Mass. 119, 127 (1992). "Like other legislative powers, the power to tax may be delegated as long as these rules are followed." *Opinion of the Justices*, *supra* at 1220.

The local option is a proper delegation of the legislative authority to tax. "For almost two centuries the General Court has delegated to municipal authorities the power to assess property and to determine the rates of tax thereon. . . . The legality of the delegation has been so thoroughly assumed as settled that it has never been subject to challenge in this Commonwealth. . . . Thus a commentator has properly concluded: 'The rule that the power of taxation is incapable of delegation is subject to one universally recognized exception, namely, that the legislature may grant to municipal corporations the power of taxation for municipal purposes to be exercised by them . . . . The power of the legislature to authorize municipal corporations to levy taxes for the purpose of providing the

necessary revenue to defray the expenses of their municipal government and to pay for the construction of public improvements within their respective limits has been exercised for so long a time that its existence is not open to dispute.' " *Opinion of the Justices*, 378 Mass. 802, 810 (1979), quoting P. Nichols, Taxation in Massachusetts 21 (3d ed. 1938).

Additionally, the authority delegated the various municipalities to accept or decline the local option was proper under the considerations set out in *Powers* v. *Secretary of Admin., supra.* First, the decision to include interim property is not a fundamental policy decision, but rather one based on local considerations. See *Opinion of the Justices, supra* (delegation of power to assess property and determine tax rates made necessary by awkwardness of Statewide rate of tax in face of differing revenue requirements of localities and varying amounts and kinds of property in different areas).

Second, the taxing of real property, with or without improvements, is an area in which the Legislature has provided stringent guidelines for the municipalities to follow. See, e.g., G. L. c. 40, § 56; G. L. c. 58, § 6; G. L. c. 59. To the extent that the plaintiff suggests the Legislature needed to provide guidelines to aid a municipality in determining whether to accept the local option, its arguments are without merit. Whether to accept the local option is a choice based on local considerations. Additionally, the local option gives a municipality limited discretion either to opt in or opt out. If a municipality chooses to accept the local option, it must include interim property in assessing property taxes. If it chooses not to accept the local option, interim property is not included in assessing the tax. Furthermore, we have not required the Legislature to provide municipalities with guidance in determining whether to accept or reject local options in the past. See, e.g., G. L. c. 40, § 39J (power to charge user fees for water and sewer service); G. L. c. 40, §§ 42G, 42K (power to levy special assessments for water distribution and betterments); G. L. c. 40, § 57 (power to revoke or deny building permit or other local license for nonpayment of taxes).

Finally, the taxing scheme provides sufficient review to control abuses of discretion. Any aggrieved party continues to have the same avenues available prior to the promulgation of

the local option to challenge the assessment of a tax. To the extent that the plaintiff alleges that the local option is an improper delegation of authority because it fails to provide a means for an aggrieved party to challenge the decision of the municipality to accept the local option, its arguments are devoid of merit. In the event that the municipality does not provide a means of review, a plaintiff may file a civil action in the nature of certiorari. G. L. c. 249, § 4. See *Bermant* v. *Selectmen of Belchertown*, 425 Mass. 400, 402-403 (1997); *Hood Indus., Inc.* v. *City Council of Leominster*, 23 Mass. App. Ct. 646, 648 (1987).

III. *Conclusion.*

For the foregoing reasons we conclude that the local option in the third sentence of G. L. c. 59, § 2A (*a*), does not offend constitutional requirements of proportional taxation, and is a proper delegation of legislative authority to tax to municipal governments.

*Judgment affirmed.*